IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DONTAY J. TOLLIVER, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. DKC-25-326 |
| PAUL MATERA, M.D., | * | |
| WARDEN WILLIAM BAILEY and | | |
| JEFFERY SHOLEY, | * | |
| Defendants. | * | |
| | *** | |

# MEMORANDUM OPINION

Plaintiff Dontay J. Tolliver ("Mr. Tolliver") filed this civil suit against Dr. Paul Matera, Jeffery Sholey, CEO of YesCare Corp., and Warden William Bailey alleging that he received inadequate medical care for a bump on his head. ECF No. 6. Pending before the court are a Motion to Dismiss or, in the Alternative, for Summary Judgment filed by Defendants Dr. Paul Matera and Jeffery Sholey ("Medical Defendants") (ECF No. 24) as well as a Motion to Dismiss or, in the Alternative, for Summary Judgment filed by Defendant Warden Bailey (ECF No. 28). Mr. Tolliver opposes the Medical Defendants' motions. ECF No. 27. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2025). For the reasons that follow, Defendants' motions will be granted.

BACKGROUND

Mr. Tolliver's unverified complaint, filed on January 31, 2025, states that he arrived at Eastern Correctional Institution ("ECI") on June 23, 2022, and informed the medical staff about the small lump on the back of his head causing him daily pain and migraines. ECF No. 6 at 5. Mr. Tolliver alleges that he was given only antibiotics which he states were not effective and made him feel sick. *Id.* The lump continued to grow over the next three years. *Id.* In 2024, Mr. Tolliver

was told by medical staff that he would be sent to a hospital for removal, but this never occurred. *Id.* Mr. Tolliver wrote sick call requests[1] and letters to Warden Bailey but not until 2025, was an x-ray completed. *Id.* at 6. Mr. Tolliver complains that he is still in constant pain and fears that the lump could be cancerous. *Id.*

Mr. Tolliver asserts that both Warden Bailey and Dr. Matera were aware of his condition and did nothing to provide him with medical care in violation of the Eighth Amendment. ECF No. 6 at 5. Mr. Tolliver seeks to hold Defendant Sholey accountable for the actions of the medical staff because he is the chief executive officer of YesCare Corp., which was ECI's contracted medical provider. *Id.* He seeks damages and injunctive relief. *Id.* at 7.

In response to the amended complaint, the Medical Defendants submit the declaration of Dr. Matera which includes Mr. Tolliver's related medical records. ECF Nos. 24-2, 24-3. Dr. Matera attests to the following. The first instance in which Mr. Tolliver reported the bump on his head, a lipoma, was via sick call request on December 16, 2023. He requested its removal complaining that it was "very annoying," "hurts from time to time," and had given him headaches over the past year. ECF No. 24-4 at 35. Mr. Tolliver submitted a similar sick call on January 10, 2024. *Id.* at 34.

RN Jennifer Adrion saw Mr. Tolliver on January 24, 2024. He reported to her that the bump had been present for five years and was painful when lying down. ECF No. 24-4 at 4. She observed that the bump was 4 cm in diameter, 1.5 cm raised, not infected, and felt "firm but movable." *Id.* Mr. Tolliver had a provider visit with Dr. Matera on January 30, 2024. ECF No. 24-3 at 35. Dr. Matera avers that Mr. Tolliver had possibly developed an infection from shaving

---

[1] Mr. Tolliver attached two sick call requests to his Complaint, for December 29, 2023, and June 27, 2024. (ECF No. 1-1).

2

his scalp. ECF No. 24-2 at ¶ 8. He assessed "a lipoma vs sebaceous cyst vs a combination of the two" but did not consider it an acute issue. *Id.* Dr. Matera wanted to get updated labs to determine a cause for the swelling, but Mr. Tolliver declined. *Id.* He was prescribed a 7-day course of antibiotics in case there was an infection. *Id.*; ECF No. 24-4 at 2. Dr. Matera states that he likely told Mr. Tolliver that surgical removal may be necessary if the antibiotics were not effective. ECF No. 24-2 at ¶ 9. Dr. Matera was never informed that the antibiotics did not work. *Id.*

Dr. Matera explains that lipomas and sebaceous cysts are both lumps under the skin; neither become acute issues unless there is an issue such as infection. ECF No. 24-2 at ¶ 10.

> While they can appear similar, their composition, texture, and potential symptoms differ. A lipoma is a benign, slow-growing noncancerous tumor composed of fatty tissue most often located between the skin and muscle layer but below the skin. Lipomas usually feel soft and rubbery and often are nontender. They are usually painless unless they grow large enough to press on nerves or blood vessels which can cause discomfort. If the lipoma is large, has unusual features, or appears to be deeper than the fatty tissue, an x-ray, ultrasound, MRI, or CT scan may be used to investigate. A lipoma typically does not need to be treated but if it is painful or growing, it may be surgically removed.
>
> Sebaceous cysts are sacs filled with keratin, a substance produced by the skin's sebaceous glands. These cysts form when a sebaceous gland's duct becomes blocked or damaged, trapping the oily substance (sebum) it produces. Sebaceous cysts often appear as small, round bumps with a central opening with a tiny blackhead plugging the opening. While they are generally harmless, they can become inflamed or infected, causing discomfort and requiring treatment. Treatment can include injecting a steroid into the cyst to alleviate swelling and inflammation, an incision and drainage, or a minor surgery to remove the entire cyst.

*Id.* at ¶ 10, 11.

According to the medical records, Mr. Tolliver did not complain about the lipoma again until July 2, 2024, claiming that he was supposed to have it removed months ago and now he was developing another bump on his arm. ECF No. 24-4 at 33. RN Marie Desir saw Mr. Tolliver in sick call on July 4, 2024. ECF No. 24-3 at 34. She noted that there was no plan for removal in his

records but referred him for a follow up with a provider.  *Id.*  Dr. Matera avers that this provider appointment was never scheduled for reasons unknown to him.  ECF No. 24-2 at ¶ 13.  Regardless, he submitted a consultation request on February 13, 2025, after the Complaint was filed, for Mr. Tolliver to see plastic surgery about excising the lipoma.  ECF No. 24-3 at 25.  The Utilization Management department declined the request and recommended an ultrasound of the tissue as an alternative plan.  *Id.* at 28.  Dr. Donald Alves submitted a consultation request for a soft tissue ultrasound on February 25, 2025, which was approved.  *Id.* at 23-24.

     Mr. Tolliver had his ultrasound on March 18, 2025, which showed a "isoechoic, heterogenous, avascular solid lesion with internal microcalcifications."  ECF No. 24-5 at 2.  The radiologist noted that it needed to be determined whether an MRI was necessary for further evaluation.  *Id.*  CRNP Stephanie Cyran saw Mr. Tolliver in the chronic care clinic on May 19, 2025.  ECF No. 24-3 at 16.  She had reviewed the ultrasound results with the Regional Medical Director and planned to submit requests for an MRI and a surgical consult.  *Id.*  Both requests were approved.  *See id.* at 9-15.  Mr. Tolliver went offsite for the MRI, but it could not be completed due to fragments of a bullet from an old gunshot wound in his body.  ECF No. 24-5 at 13-14.  Mr. Tolliver was scheduled for a follow up provider appointment to request a head CT.  *Id.*

     On July 21, 2025, Mr. Tolliver saw PA-C Ruth Campbell and reported a bad smelling white and pink drainage from the lipoma.  ECF No. 24-5 at 9.  With Mr. Tolliver's consent, PA Campbell performed a "complicated or multiple incision and drainage of [the] abscess."  *Id.* at 10.  She applied a sterile dressing and provided Mr. Tolliver with aftercare instructions, including to return the following two days to have the wound checked.  *Id.*  PA Campbell prescribed an antibiotic and ordered a wound culture.  *Id.* at 10-11.  Mr. Tolliver returned for wound care on July 23 and 24, 2025.

STANDARD OF REVIEW

In reviewing the complaint in light of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). Fed. R. Civ. P. 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325–26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained that a "plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Defendants' dispositive motions are also filed in the alternative as motions for summary judgment. Pursuant to Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to … the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011); *see Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023); *Putney v. Likin*, 656 F. App'x 632, 638–39 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). Mr. Tolliver has not made any such claim in his opposition. Therefore, the court will review the motions under the summary judgment standard.

ANALYSIS

Eighth Amendment Claim

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543.

7

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or ensure it was available.  *See Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994); *see also Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).  Objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).  "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

After a serious medical need is established, a successful Eighth Amendment claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition.  *See Farmer*, 511 U.S. at 839–40.  Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'"  *Anderson v. Kingsley*, 877 F.3d 539, 545 (4th Cir. 2017) (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk.").  "Actual knowledge or awareness on the part of the alleged inflicter … becomes

8

essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 842).

The Medical Defendants argue that Mr. Tolliver's lipoma did not present a serious medical need when he was seen by Dr. Matera, asserting that Mr. Tolliver himself described it as a longstanding issue which caused him only some discomfort. ECF No. 24-1 at 13. Medical Defendants do, however, concede that once the lipoma became infected, it became a serious medical need, but contend that Dr. Matera was not involved in Mr. Tolliver's care at that time. *Id.* at 13, n.2. The court need not decide whether the lipoma was sufficiently serious because nothing in the record establishes that Mr. Tolliver was subjected to deliberate indifference by Dr. Matera.

To the extent Dr. Matera was involved in Mr. Tolliver's medical care, he was not subjectively reckless in his course of action. He examined the lump in January of 2024, identified that it was possibly a lipoma or sebaceous cyst or both, and prescribed Mr. Tolliver antibiotics to ensure it was not infected. Mr. Tolliver declined Dr. Matera's request for additional lab testing. The medical records do not show that Dr. Matera determined that surgical excision was necessary at that time, but he probably did tell Mr. Tolliver that surgery might be necessary if the antibiotics did not work.

If Mr. Tolliver is claiming Dr. Matera should have ordered the lipoma's removal, he has not made a sufficient showing to establish deliberate indifference. "Disagreements between an

inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)); *accord Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) ("[W]e consistently have found such disagreements to fall short of showing deliberate indifference."). There are no exceptional circumstances alleged in this case. At the time of Dr. Matera's involvement, he determined the possible diagnosis and sought further information. While Mr. Tolliver may have wanted the lipoma removed, it does not show that Dr. Matera believed him to be at substantial risk of harm. He acknowledges in his opposition that Dr. Matera only said he "might need surgery" during that appointment. ECF No. 27 at 1. Moreover, Dr. Matera was never informed that the antibiotics had been ineffective. Nor is there any evidence that they were – Mr. Tolliver did not submit any sick call requests between January, when he saw Dr. Matera, and July 2024. It appears that in July 2024, Mr. Tolliver should have seen Dr. Matera or another provider for a follow up, but the failure to schedule that appointment and thus the delay in submitting a consultation request until February 2025, cannot be attributed to Dr. Matera. Mr. Tolliver contends that Dr. Matera could have, at any time, requested to see him even if there was a scheduling error. *See* ECF No. 27 at 3-4. But, again, as there is no evidence that Dr. Matera was aware that Mr. Tolliver required additional treatment, the court cannot find him deliberately indifferent for not scheduling a follow-up appointment himself. Based on these findings, Dr. Matera is entitled to summary judgment in his favor.

Supervisory Liability

Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat

superior liability under § 1983). A private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of respondeat superior. *See Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727–28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 316 F. App'x 279, 282 (4th Cir. 2009). To the extent Mr. Tolliver sought to hold YesCare Corp. accountable by naming Mr. Sholey, his claim fails.

Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). A supervisor may be liable for the violations of their subordinates if the supervisor knew the subordinates engaged in conduct that posed an unreasonable risk of constitutional injury and failed to respond in such a manner that gives to an inference of deliberate indifference or tacit authorization of their subordinates' bad acts. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Mr. Sholey avers that he is not a medical provider and the doctors and nurses at ECI did not report to him during the time YesCare Corp. was ECI's contracted medical provider. ECF No. 25 at ¶ 2, 3. Mr. Tolliver does not put forth any evidence which contradicts this, nor has he alleged Mr. Sholey's personal participation in any constitutional violation. Accordingly, he is entitled to summary judgment.

Exhaustion of Administrative Remedies

Defendant Warden Bailey raises the affirmative defense that Mr. Tolliver has failed to exhaust his administrative remedies. If Mr. Tolliver's claim has not been properly presented

through the administrative remedy procedure it must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.  The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner.  Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants.  *See Jones v. Bock*, 549 U.S. 199, 215–216 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017).  Nevertheless, a claim that has not been exhausted may not be considered by this court.  *See Jones*, 549 U.S. at 220. In other words, exhaustion is mandatory.  *Ross v. Blake*, 578 U.S. 632, 639 (2016).  Therefore, ordinarily, a court may not excuse a failure to exhaust.  *Ross*, 578 U.S. at 639 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Generally, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he … PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). But the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

In Maryland prisons, the Administrative Remedy Procedure is the administrative process that must be exhausted. Md. Code Regs. § 12.02.28.02(B)(1), (D) (2018). First, a prisoner must file an ARP with the warden within 30 days of the incident at issue. Md. Code Regs. § 12.02.28.05(D)(1) (requiring filing with the "managing official"); Md. Code Regs. § 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for management of the correctional facility"); Md. Code Regs. § 12.02.28.09(B) (setting the 30-day deadline). Second, if the ARP is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days. Md. Code Regs. § 12.02.28.14(B)(5). If the appeal is denied, the prisoner must appeal within 30 days to the Incarcerated Individual Grievance Office ("IIGO"). *See* Md. Code. Ann., Corr. Servs. §§ 10-206,

10-210; Md. Code Regs. § 12.07.01.05(B). Inmates may seek judicial review of the IIGO's final determinations in a Maryland circuit court. *See* Md. Code Ann., Corr. Servs. § 10-210(a).

Defendant Warden Bailey asserts that Mr. Tolliver did not file any ARP at the institutional level with regard to his claims prior to initiating this lawsuit. ECF No. 28-1 at 12. To support his affirmative defense, Warden Bailey submits the declaration of Lieutenant Evan Ward, ECI Administrative Remedy and Grievance Coordinator. ECF No. 28-4. Lt. Ward attests that a search of the ECI ARP records revealed that Mr. Tolliver did not file any ARPs between January 1, 2022, and June 18, 2025. *Id.* at ¶ 3. Mr. Tolliver's original complaint was received for filing on January 31, 2025. He has not submitted anything to rebut Warden Bailey's defense. The court finds that the record establishes Mr. Tolliver's failure to pursue his claim through the Administrative Remedy Procedure prior to filing his complaint or at all. Even if Mr. Tolliver had filed an ARP after bringing this suit, exhausting administrative remedies after a complaint is filed will not save the case from dismissal for failure to exhaust administrative remedies. *See Neal v. Goord*, 267 F.3d 116, 121–22 (2d Cir. 2001) (overruled on other grounds). Mr. Tolliver's amended complaint as it pertains to Defendant Warden Bailey must therefore be dismissed without prejudice for failure to exhaust administrative remedies.[2]

---

[2] While Warden Bailey moved for summary judgment, and the court has considered evidence attached to the motion in reaching the conclusion herein, the Fourth Circuit has advised that dismissal for failure to exhaust should be without prejudice. *See Moss v. Harwood*, 19 F.4th 614, 623 n.3 (4th Cir. 2021) (collecting cases); *Germain v. Shearin*, 653 F. App'x 231, 234–35 (4th Cir. 2016) (finding dismissal "mandatory" for failure to exhaust and affirming district court's grant of summary judgment but modifying order to be dismissal without prejudice).

CONCLUSION

By a separate order which follows, Defendants' motions shall be granted. Judgment will be granted in favor of the Medical Defendants, and the amended complaint against Defendant Warden Bailey will be dismissed without prejudice.


January 23, 2026                                       /s/
                                              DEBORAH K. CHASANOW
                                              United States District Judge